JUDSON McMAHAN v. BLACK MOUNTAIN RAILWAY COMPANY.

(Filed 15 December, 1915.)

**1. Easements—Remedies of Owner—Measure of Damages—Railroads—Right of Condemnation.**

Where a railroad company enters upon lands by virtue of its franchise and constructs and operates its railroad thereon, the remedies for compensation available to the owner are either to petition before the clerk under the statutes governing such proceedings or to sue in the Superior Court for permanent damages, the measure thereof being the market value of the lands actually covered by the right of way, and such damages thereby caused to the remainder of the tract, deducting from the estimate the pecuniary benefits or advantages special and peculiar to the land in question: and, when such are paid, an easement will pass as in case of condemnation.

**2. Contracts—Interpretation—Ambiguity—Existing Conditions.**

In interpreting contracts, the intent of the parties as expressed in the entire instrument shall prevail, and where the contract is expressed in language sufficiently ambiguous to permit of construction. resort may be had in proper instances not only to the language employed. but to the nature of the instrument itself, the condition of the parties executing it, and the objects it had in view.

**3. Same—Easements—Railroads—Lessor and Lessee—Measure of Damages.**
A grant of a right of way for one purpose does not necessarily convey an easement for a different purpose imposing further burdens upon the land without additional compensation to the owner; and a lease of lands to a lumber plant, conferring the right to construct railroads thereon for its own purposes, will not be construed to give to the lessee the right to grant a railroad company the right to construct and operate its railroad or spur-tracks thereon, though advantageous to the lessee; and when such is done the owner has the present right of action against the railroad company for permanent damages to the land, the terms of the lease being considered as a circumstance relevant to the issue.

APPEAL by plaintiff from *Long, J.,* at March Term, 1915, of YANCEY.

Proceedings instituted by plaintiff to recover damages for railroad right of way, heard on appeal from the clerk of Superior Court.

On the hearing there was evidence tending to show that plaintiff was the owner of a tract of land of twenty-five acres in said county, and that defendant company had entered on a portion of same, constructed its depot and various tracks, and was operating its road under its franchise, etc.; that the works of defendant on the property to date consisted of six different railroad tracks, a depot and station house, and, in addition thereto, the Carolina Spruce Company has constructed and is operating its own private line across and upon said land; and it was admitted by defendant: "That it has its main line of railroad on the land described in the lease, and admits that there is a spur going to a coal chute on the same land, and that it has some other branches on the land connected with the private lines of the Carolina Spruce Company, the number of which the counsel does not know, but claims they are short spur lines for outside connection, and that it has a depot on the land described in the lease."

It was further admitted that the defendant had acquired, by written assignment, the interests and privileges held by Carolina Spruce Company, under a written lease conveying to said company the said property for twenty years, with other stipulations appearing in the lease, and claimed the right to enter and construct its railroad station, etc., and operate the same under and by virtue of the terms of said lease without being amenable to damage or other claim of plaintiff.

On motion duly made, the court being of opinion that the plaintiff had no present right to recover damages, entered judgment of nonsuit, and plaintiff excepted and appealed.

*Hudgins, Watson & Watson for plaintiff.*
*J. J. McLaughlin and Pless & Winborne for defendant.*

HOKE, J., after stating the case: It having been made to appear that the defendant company has entered on plaintiff's land, constructed its road and is operating the same by virtue of its franchise, under our decisions and statutes applicable, and so far as the remedy is concerned,

it was open to plaintiff either to petition before the clerk under the law governing such proceedings—the course pursued in this instance—or to sue in the Superior Court for permanent damages suffered, in which case, and on payment of same, an easement would pass as in case of condemnation. *Porter v. R. R.,* 148 N. C., 563; *Beasely v. R. R.,* 147 N. C., 363; *Beverly v. R. R.,* 145 N. C., 27; Revisal 1905, sec. 394. Our cases on the subject also hold that, in awarding damages under either procedure, the plaintiff may recover the market value of the land actually covered by the right of way, and also damages done to the remainder of the tract, deducting from the estimate the pecuniary benefits or advantages which are special and peculiar to the land in question, but not those which are shared by the owner in common with other owners in the same vicinity. *R. R. v. Mfg. Co.,* 169 N. C., 160; *R. R. v. Armfield,* 167 N. C., 464; *R. R. v. McLean,* 158 N. C., 498.

Speaking to the reason for awarding the full market value of the land actually covered by the right of way, the Court, in *McLean's case, supra,* said: "In determining this difference (that is, the value before and after the imposition of the easement), owing to the fact that the easement is perpetual in its nature, and, in all probability, likely to become permanent, and to the position just referred to: that the entire right of way may be at any time appropriated and used for railroad purposes whenever, in the judgment of the company, such use is required, it is held by the weight of authority that the damages allowed the owners, as a general rule, shall include the market value of the land actually taken," etc.

It is not claimed in the present case that any such right of way has been condemned or paid for by defendants in the present instance, but it is contended by defendant that no damages are recoverable by reason of a lease of four acres of the property made by plaintiff to the Carolina Spruce Company, bearing date 12 March, 1912, and which said company had assigned to defendant before it entered upon the property. This instrument, after leasing to the Spruce Company the four acres in question for the term of twenty years, on payment of $50 per year, contains the following stipulations:

"The parties of the first part covenant and agree that they will willingly give possession of said house now occupied by them at any time that the parties of the second part demand same, and upon condition that the parties of the second part build for the parties of the first part a house of equal value without any cost to the parties of the first part, at some place designated by the parties of the first part on their lands near said spring in said branch.

"The party of the first part covenants and agrees that the parties of the second part shall have the right to erect buildings, railroads, tramroads, lumber yards, or anything that may be necessary in the manu-

facture of lumber, wood, bark, etc., and they shall have the right to remove any portion of same at any time that they may desire, or they can let same remain or any portion of same upon the lands without any damages to the party of the first part. The parties of the second part shall have the right of ingress and egress through and over the lands, and shall have the right to destroy all or any portion of the trees of said lands or anything else that may be thereon.

"The party of the second part covenants and agrees that the party of the first part shall have free use of said spring in said branch so far as their needs may require, and that said party of the second part will give the parties of the first part an outlet to the public road."

It is an accepted rule of construction here and elsewhere that the intent of the parties as expressed in the entire contract shall prevail, and that in ascertaining this intent and in agreements sufficiently ambiguous to permit of construction resort may be had "not only to the language employed, but to the nature of the instrument itself, the condition of the parties executing and the objects they had in view."

In *Merriam v. U. S.,* 107 U. S., 441, the principle is expressed as follows: "In such contracts it is a fundamental rule of construction that the courts may look to not only the language employed, but to the subject-matter and surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made."

These rules of interpretation have been approved in a great number of cases in this State (*Spencer v. Jones,* 168 N. C., 291; *Simmons v. Groom,* 167 N. C., 271; *Triplett v. Williams,* 149 N. C., 394; *R. R. v. R. R.,* 147 N. C., 368; *Gudger v. White,* 141 N. C., 507); and, applied to the instrument in question here, we do not hesitate to hold that it was neither the purpose nor permissible construction of the lease that it passed to the lessee the right to superimpose a burden of this character on the property conveyed, but the land was leased for the restricted purposes indicated in the covenants for the work of the lessee as a manufacturer of lumber in its own specified business, and the railroads, tramways, lumber yards, etc., mentioned in the stipulations quoted, referred to such agencies only as were reasonably required for the principal purpose. It is well understood that the acquisition of a right of way for one purpose does not justify the exercise of a different and additional easement without making additional compensation therefor, and the restricted purpose of the present lease brings the rights obtained under it within the principle. *Wadsworth v. Traction Co.,* 162 N. C., 503; *Staton v. R. R.,* 147 N. C., 428; *Hodges v. Telegraph Co.,* 133 N. C., 225; *Brown v. Electric Co.,* 138 N. C., 533.

It is contended for defendant that this principle does not apply in the present case because the grantor had a lease of the property, and not

merely a right of way. As we have endeavored to show, the terms of this instrument, by correct interpretation, so restrict the purposes of user that the right acquired thereunder may very well be likened to a right of way for a specified purpose. But, if defendant's position be conceded, it would not avail to protect the defendant from liability, for, at most, the lease only purports to convey the rights specified therein for twenty years, and under the principle for awarding damages for a railroad right of way where the company has entered on and appropriated property in the exercise of a *quasi*-public franchise, to wit, that they became responsible for the value of the entire property actually covered by the right of way and also damages to the remainder of the land, the rights obtained under the lease would not justify the appropriation of this property for such a purpose or protect the railroad from a present award of damages.

While we hold that defendant company is presently liable for permanent damages for the right of way appropriated by them, under the assignment offered in evidence, it appears that they have acquired and hold the rights and privileges granted to the original lessee (McAdam Landlord and Tenant, sec. 241; Taylor Landlord and Tenant, secs. 425-431; Woods Landlord and Tenant, sec. 81), and, in estimating the damages to be allowed plaintiff, the fact that he has given a lease of this character, conferring a right to build railroads, tramways, etc., for purposes and in furtherance of the Spruce Company's business, may be considered as a circumstance relevant to the issue as to the amount of damages.

For the reasons stated, we are of opinion that there was error in ordering a nonsuit, and the judgment to that effect will be set aside.

Reversed.